NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EURICA CALIFORRNIAA,**

*Plaintiff-Appellant*

**v.**

**KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**

*Defendant-Appellee*

---

2022-1640

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:20-cv-00985-MSN-TCB, Judge Michael S. Nachmanoff.

---

Decided: Nov. 7, 2022

---

EURICA CALIFORRNIAA, Mahopac, NY, pro se.

DANA KAERSVANG, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BRIAN M. BOYNTON, DANIEL TENNY; JESSICA D. ABER, MEGHAN LOFTUS, Office of the United States Attorney for the

Eastern District of Virginia, United States Department of Justice, Alexandria, VA; KAKOLI CAPRIHAN, BENJAMIN T. HICKMAN, THOMAS W. KRAUSE, BRIAN RACILLA, FARHEENA YASMEEN RASHEED, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

_____

Before LOURIE, DYK, and HUGHES, *Circuit Judges*.

PER CURIAM.

Eurica Califorrniaa appeals from the decision of the United States District Court for the Eastern District of Virginia granting summary judgment in favor of the United States Patent and Trademark Office ("PTO"). *See Califorrniaa v. Hirshfeld*, No. 1-20-cv-00985, 2021 WL 6196996 (E.D. Va. Dec. 20, 2021). We *affirm*.

## BACKGROUND

Califorrniaa alleges that the PTO incorrectly calculated the Patent Term Adjustment ("PTA") for his patent, U.S. Patent 10,245,075 (the "'075 patent"), by improperly deducting 51 days due to applicant delay.

Patent terms are generally extended by one day for each day of PTO delay, minus one day for each day during which the applicant fails to engage in reasonable efforts to conclude prosecution of the application. 35 U.S.C. § 154(b)(2)(C).[1] Congress delegated to the PTO the

_____

[1]    35 U.S.C. § 154(b)(2)(C): Reduction of period of adjustment. —

(i) The period of adjustment of the term of a patent under paragraph (1) shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application.

authority to define those situations that reflect a failure to engage in reasonable efforts to conclude prosecution of the patent.  § 154(b)(2)(C)(iii).  To avoid case-by-case determinations of what constitutes a failure to engage in reasonable efforts to conclude prosecution, it has promulgated regulations outlining examples of such efforts.  *See* 65 Fed. Reg. 56366, 56378–79 (Sept. 18, 2000).  It has defined an applicant's amendment of a patent application after it issues a notice of allowance as one such failure.  37 C.F.R. § 1.704(c)(10).[2]  Following our January 23, 2019

---

(ii) With respect to adjustments to patent term made under the authority of paragraph (1)(B), an applicant shall be deemed to have failed to engage in reasonable efforts to conclude processing or examination of an application for the cumulative total of any periods of time in excess of 3 months that are taken to respond to a notice from the Office making any rejection, objection, argument, or other request, measuring such 3-month period from the date the notice was given or mailed to the applicant.

(iii) The Director shall prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application.

[2]    37 C.F.R. § 1.704(c)(10) (2019): Submission of an amendment under § 1.312 or other paper, other than a request for continued examination in compliance with § 1.114, after a notice of allowance has been given or mailed, in which case the period of adjustment set forth in § 1.703 shall be reduced by the lesser of:

(i) The number of days, if any, beginning on the date the amendment under § 1.312 or other paper was filed and ending on the mailing date of the Office action or notice in response to the amendment under § 1.312 or such other paper; or

(ii) Four months.

decision in *Supernus*, the PTO revised its regulations governing the calculation of PTA, including § 1.704(c)(10). *Supernus Pharms., Inc. v. Iancu*, 913 F.3d 1351 (Fed. Cir. 2019); 85 Fed. Reg. 36335, 36335 (June 16, 2020). This subsection was amended in June 2020 to (1) distinguish between after-allowance amendments expressly requested by the PTO, and those not, and (2) change the relevant timeframe for the calculation of a reduction in PTA. 37 C.F.R. § 1.704(c)(10) (2020)[3]; 85 Fed. Reg. at 36335.

After an extensive prosecution involving numerous amendments, the examiner found that Califorrniaa's patent could issue if minor additional changes were made to the claim language. C.A. 101–03.[4] The examiner made the amendment on his own authority and mailed the Notice of Allowance on December 11, 2018. C.A. 100. On January 7, 2019, Califorrniaa requested an additional interview, attaching a new proposed amendment to the interview request. C.A. 112–16. The interview was held the following day and included discussion of the potential amendment. *Id.* On January 10, 2019, Califorrniaa accordingly submitted a new amendment making minor changes (*e.g.*, the addition of a comma) to some of the examiner-amended claim limitations, and several substantive changes (*e.g.*, the

---

[3]    37 C.F.R. § 1.704(c)(10) (2020): Submission of an amendment under § 1.312 or other paper, other than an amendment under § 1.312 or other paper expressly requested by the Office or a request for continued examination in compliance with § 1.114, after a notice of allowance has been given or mailed, in which case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the day after the date of mailing of the notice of allowance under 35 U.S.C. 151 and ending on the date the amendment under § 1.312 or other paper was filed.

[4]    "C.A." refers to Appellee's Corrected Appendix.

deletion of limitations) unrelated to the examiner amendment. C.A. 117–36. On February 26, 2019, the examiner responded and accepted the amendment. C.A. 140–161. The patent issued on April 2, 2019. C.A. 162.

The PTO, in calculating PTA, subtracted 51 days for the time that the plaintiff's after-allowance amendment was pending pursuant to 37 C.F.R. § 1.704(c)(10) (2019). At the time of calculation, § 1.704(c)(10) required a reduction of PTA for "[s]ubmission of an amendment under § 1.312 . . . after a notice of allowance has been given or mailed" by "the lesser of: (i) The number of days, if any, beginning on the date the amendment under § 1.312 or other paper was filed and ending on the mailing date of the Office action or notice in response to the amendment under § 1.312 or such other paper; or (ii) Four months."

Pursuant to 35 U.S.C. § 154(3)(B)(ii), Califorrniaa timely filed a request for redetermination of PTA. C.A. 163–165. Califorrniaa argued that his only possible course of action to address the examiner's amendment was to file his own after-allowance amendment, and therefore his actions did not constitute a failure to engage in reasonable efforts to conclude prosecution. The PTO found that the situation still fell within the rule, and that Califorrniaa would not benefit from an exception anyway because he sought changes unrelated to the examiner's amendment and that it could have been made earlier. C.A. 6–7.

Califorrniaa then sought review in the U.S. District Court for the Eastern District of Virginia under 35 U.S.C. § 145. Califorrniaa argued again that the PTA should not be reduced because the PTO's rule that all after-allowance amendments constitute applicant delay was contrary to § 154(b)(2)(C). Califorrniaa also argued that (1) he had not approved the examiner's amendment; and (2) that his PTA should be recalculated using the method outlined in the June 16, 2020 amendment to § 1.704(c)(10) because the prior version of the regulation was invalid in light of our

ruling in *Supernus*, 913 F.3d at 1358–61. The court, applying *Chevron* deference, concluded that the applicant's filing of an after-allowance amendment met the criteria for a reduction of PTA, and that Califorrniaa's other arguments were forfeited because they were not made before the PTO. C.A. 18 n.3. The court then granted summary judgment in favor of the PTO. C.A. 15–19. Califorrniaa timely filed a request for rehearing, which was denied. C.A. 21–24.

Califorrniaa then appealed the district court's grant of the PTO's motion for summary judgment to this court. C.A. 28. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(C).

## DISCUSSION

We review a grant of summary judgment according to the law of the regional circuit. *Intra-Cellular Therapies, Inc. v. Iancu*, 938 F.3d 1371, 1379 (Fed. Cir. 2019). The Fourth Circuit reviews grants of summary judgment *de novo*. *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010).

Applying a *de novo* standard, we review the PTO's PTA decision in accordance with the Administrative Procedure Act ("APA"). *See* 35 U.S.C. § 154(b)(4)(A); *Chudik v. Hirshfeld*, 987 F.3d 1033, 1039 (Fed. Cir. 2021). The APA requires that courts only "set aside agency action, findings, and conclusions" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When reviewing an agency's statutory interpretation, we apply the two-step framework established in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The parties disagree as to whether *Chevron* applies, but, consistent with our prior decisions concerning PTA calculation, we find that it does. *See Supernus*, 913 F.3d at 1356–57; *Intra-Cellular Therapies Inc. v. Iancu*, 938 F.3d 1371, at 1379, 1383 (Fed. Cir. 2019); *Gilead Scis., Inc. v. Lee*, 778 F.3d 1341, 1346 (Fed. Cir. 2015).

Califorrniaa challenges the validity of § 1.704(c)(10) under two different statutory subsections: 35 U.S.C. §§ 154(b)(2)(C)(i) and 154(b)(2)(C)(iii). We address each in turn.

## I

Califorrniaa argues that § 1.704(c)(10) (2019), and the PTO's calculation of applicant delay in accordance with that rule, violate § 154(b)(2)(C)(i) and our holding in *Supernus*. The PTO responds that this argument was forfeited and that its determination of PTA was consistent with § 154(b)(2)(C)(i) because all the time consumed by the PTO's consideration of the amendment was attributable to Califorrniaa's decision to file it. The district court declined to consider this issue, finding it had been forfeited by not being argued before the PTO. We agree with the PTO on the merits, and we therefore do not reach the issue of forfeiture.

Subsection 154(b)(2)(C)(i) mandates that "[t]he period of adjustment of the term of a patent . . . shall be reduced by a period ***equal to*** the period of time ***during which*** the applicant failed to engage in reasonable efforts to conclude prosecution of the application." § 154(b)(2)(C)(i) (emphasis added). In *Supernus*, we found the language of § 154(b)(2)(C)(i) to be "plain, clear, and conclusive." 913 F.3d at 135. We found that, pursuant to the plain language of the statute, "PTA cannot be reduced by a period of time during which there is no identifiable effort in which the applicant could have engaged to conclude prosecution because such time would not be 'equal to' and would instead exceed the time during which an applicant failed to engage in reasonable efforts." 913 F.3d at 1359. Applying that logic, we found that the PTO's assessment of applicant delay in that case exceeded its statutory authority under step one of *Chevron*. *Id*. at 1360–61. Step one of *Chevron* asks whether Congress "directly addressed the precise question at issue." *Chevron*, 467 U.S. at 842.

As the statute is unambiguous, there was no need to proceed to *Chevron* step two, and deference was not in play.

Where the facts of *Supernus* and the present case differ, however, is that the applicant in *Supernus* had no feasible actions it could have taken to conclude prosecution between the filing of its Request for Continued Examination and the European Patent Office's Notice of Opposition. Here, Califorrniaa could have, at any time in the 51 days between the filing of his after-allowance amendment and the examiner's acceptance of the proposal, withdrawn his after-allowance amendment, concluding prosecution. Therefore, unlike in *Supernus,* there was an "identifiable effort" in which Califorrniaa could have engaged to conclude prosecution.

That the PTO later amended § 1.704(c)(10) to change the period of pendency does not affect our decision. Nor can the later-amended version somehow apply to calculation of PTA for the '075 patent. The effective date of the amendment to the regulation was July 16, 2020, after the issuance of the '075 patent and calculation of its PTA. 85 Fed. Reg. at 36,335. Because we resolve this issue on the merits, we do not reach the issue of forfeiture.

## II

Califorrniaa further argues that § 1.704(c)(10) (2019), and the PTO's calculation of applicant delay in accordance with that rule, violate § 154(b)(2)(C)(iii) because his actions did not constitute a failure to engage in reasonable efforts to conclude prosecution since he was responding to an examiner-made amendment. The PTO responds that its interpretation of the statute to include all after-allowance amendments as applicant delay should be sustained, particularly given *Chevron* deference, and, regardless, Califorrniaa's after-allowance amendment could have been made earlier. We agree with the PTO.

Unlike the statutory terms at issue in *Supernus*, the meaning of "reasonable efforts" in subsection 154(b)(2)(C)(iii) is ambiguous here. *See Gilead*, 778 F.3d at 1346–49 (finding what constituted "failure to engage in reasonable efforts" not clearly addressed by Congress). Although subsection 154(b)(2)(C)(ii) provides one instance where Congress provided an example of applicant delay, the third subsection of the statute directs the PTO to prescribe other instances in which applicant behavior "constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application." 35 U.S.C. § 154(b)(2)(C)(iii). Therefore, Congress did not clearly answer whether after-allowance amendments constitute a failure to engage in reasonable efforts to conclude prosecution and we must proceed to *Chevron* step two to decide this issue.

In step two, *Chevron* requires determining "whether the [PTO's] answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 842–43. At this stage of the *Chevron* analysis, an agency's construction of a statutory scheme is afforded considerable weight. *Id.* at 844. *Chevron* teaches that, when Congress explicitly leaves a gap for an agency to fill, "[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* Therefore, we accept an agency's construction of the statute even if the agency's reading differs from what a court believes is the best statutory interpretation. *Id.*

Here, Congress expressly delegated authority to "[t]he Director [to] prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application." 35 U.S.C. § 154(b)(2)(C)(iii). As permitted by statute, the PTO promulgated § 1.704(c)(10), which encompasses the precise situation in this case—when the applicant files an after-allowance amendment. "Such broad language demonstrates Congress intended the PTO

to employ its expertise in identifying applicant conduct demonstrating a lack of 'reasonable efforts to conclude processing or examination of an application.'" *Gilead*, 778 F.3d at 1349 (citing § 154(b)(2)(C)(iii)). After-allowance amendments predictably delay the close of prosecution, and we cannot say that it was arbitrary for the PTO to conclude that applicants that elect to file amendments after having their claims allowed generally should be charged with delay. We therefore find that the PTO's interpretation of the statute was permissible here.

Califorrniaa asserts that an exception should be made for after-allowance amendments made in response to examiner-made amendments in the Notice of Allowance, as they could not have been raised earlier. But this is not the situation at hand. Califorrniaa filed a substantive after-allowance amendment unrelated to the minor amendment made by the examiner and he has not provided any reason that the amendment could not have been made earlier. C.A. 101–136. We decline to consider a situation not before us.

CONCLUSION

We have considered Califorrniaa's remaining arguments but find them unpersuasive. For the foregoing reasons, we *affirm* the judgment of the district court.

**AFFIRMED**